# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DISTRICT

ERICK WOODRUFF                                                      PLAINTIFF

VS.                  CASE NO. 3:17-CV-00203-BSM

CITY OF JONESBORO, ARKANSAS, et al                      DEFENDANTS

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT

The Defendants, City of Jonesboro, Arkansas, Harold Perrin, Suzanne Allen, and Dewayne Douglas, individually and officially, by and through counsel, C. Burt Newell and Carolyn B. Witherspoon, provide their Brief in Support of their Reply to Response to Motion for Summary Judgment respectfully state the following:

## I. INTRODUCTION

The Defendants filed their Motion for Summary Judgment on May 21, 2018 and the Plaintiff timely responded. In his response, Plaintiff alleges that the legitimate, non-discriminatory reasons for his termination as provided by the Defendants were "ridiculous" and patently false. Plaintiff, however, fails to present any evidence supporting these allegations or disputing the Defendant's contentions. In fact, the Plaintiff cannot and has not shown any causal link between his alleged harm and his allegedly protected activity, and concedes himself that his retaliation claims are weak. Further, the Plaintiff has wholly failed to establish a *prima facie* case in this matter, nor has he provided any support for his contention that the non-discriminatory purposes provided by the Defendants were pretextual, and as such his claims fail and the Defendants are entitled to qualified immunity.

## II. ARGUMENT

### A. There is no causal link between the Plaintiff's alleged protected activity and his termination, nor is there a temporal link.

Although the Plaintiff concedes that he has no cause of action for First Amendment retaliation and that this claim should be dismissed, he does proceed with his argument that he was retaliated against for protected conduct in violation of Article 2, Section 4 of the Arkansas Constitution. The weight of the Plaintiff's argument here relies upon his understanding that the Defendants did not intend to retaliate against him. This, however, misconstrues, willfully or otherwise, the Defendants' argument in its entirety.

The Plaintiff cannot establish that he was retaliated against, because there is no semblance of a causal link between the Plaintiff's interactions with Mark Perrin, the Edgewater Audit, and the Plaintiff's termination (or anything in between). The incident with Mark Perrin occurred in December of 2014. **(Docket Entry 25, Exhibit "1", pp. 44-45)**. Long before, in January of that year, Mayor Perrin entered into talks with Edgewater on how to have an audit conducted with the City. **(Docket Entry 25, Exhibit "2", pp. 27-28).** The Mayor was not specifically interested in Edgewater conducting the audit, but had interactions with Cliff Rushing in the past, and used him as a resource to gain information. Although the Plaintiff claims that the Mayor "hired his friends to come audit me," the audit could not take place without City Council approval. **(Docket Entry 25, Exhibit "8", pp. 42-44).** This process required that companies apply to conduct the audit, and a vote in the Council must take place before $49,07964 could be expended for the audit.

Edgewater was not approved to conduct the audit until April 21, 2015, and the audit did not begin in earnest until that summer. Suzanne Allen, the Plaintiff's direct supervisor, was not hired

as CFO until nearly a year after the Mark Perrin incident and approximately a week after the audit findings were presented to the City Council. Edgewater itself is a third-party organization approved and hired by the City Council. It does not take its queues from the Mayor. It was Suzanne Allen's decision to contract with Edgewater, post-audit, to assist in remedying the issues presented in the audit, and Rushing and Allen worked together to create the PIP for the Plaintiff and to support the Plaintiff in its execution. The Plaintiff signed the PIP on March 4, 2016, exactly fifteen months after the Mark Perrin incident, and was not fired until January 9, 2017– two years after that incident.

Despite the Plaintiff's protestations, it is clear that the idea to conduct an IT audit well pre-dates his alleged protected conduct. Further, the Plaintiff does not allege any type of grand conspiracy involving the entire City, and it is clear that the Mayor had no hand in accepting Edgewater's bid to conduct the audit, nor did the Mayor have any involvement in the Plaintiff's PIP or termination. Mayor Perrin's only role in obtaining the audit was as a member of the advisory committee to the City Council. The decision to hire Edgewater was ultimately made by a vote by the City Council. The Plaintiff's supervisor, and the decision maker regarding his PIP and termination was Suzanne Allen, who, it is clear, had no relationship with Mark Perrin or any reason to retaliate against the Plaintiff two years after the incident with Mark, in which she had no involvement.

**B. The Plaintiff has not and cannot establish a prima facie case of race discrimination, nor can he establish pretext.**

  *i. Prima Facie Case.*

The Plaintiff asserts that he meets the threshold burden of the *McDonnell Douglas* analysis by virtue of highlighting that he lacked any disciplinary actions, that he received a Mayor's Commendation, and that he received a single good evaluation during his time with the City. However, the Plaintiff's argument is completely devoid of any allegations of race discrimination on

the part of Mayor Perrin, Suzanne Allen, Dewayne Douglas, or the City of Jonesboro.

While this initial burden may be low, in order to defeat the Defendants' motion, the Plaintiff must "set forth evidence sufficient to show that he and the comparators were 'involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Jones v. City of St. Louis, Missouri*, 825 F.3d 476, 481 (8th Cir. 2016) (quoting *Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012)). He has failed to do so. The Plaintiff makes much of Wixton Huffstetler receiving a raise in 2016, asserting that they were similarly situated, because each was a department head with a disciplinary record. Plaintiff goes on to misconstrue the Defendants' argument, stating that a raise was determined by the job an individual had rather than performance, discipline, or conduct. This is simply not the case. The Plaintiff and Wixton Huffstetler had different jobs with different supervisors. Each supervisor has his or her own expectations with regard to performance or discipline, and the Plaintiff and Mr. Huffstetler cannot be considered similarly situated in any relevant respect for this reason.

As discussed in more detail in the Defendants' initial briefing, the Plaintiff's lack of a raise and his termination were a direct result of the Edgewater audit and his ongoing failure to abide by the terms of his PIP when given numerous opportunities to do so. Suzanne Allen stated specifically that Woodruff did not get a pay raise at her direction because of the fact he was on final warning. **(Docket Entry 25, Exhibit "5", p. 5).** There is ample evidence in the record supporting the clear facts that there is no pattern of racial discrimination in the City of Jonesboro. Both African-American and Caucasian employees received raises for the year 2016, and some had disciplinary records at that time. Any alleged discriminatory comments made by Jonesboro employees were not made by any Defendant in the case a bar, and there is no evidence that those remarks were supported by any

Defendant.

It is clear, therefore, that there is no pattern of race discrimination within the City of Jonesboro, and the Plaintiff has failed to establish, as no facts exist that would establish, that his termination or lack of a raise in 2016 were the result of any racial discrimination by any party to this action or any individual in the City of Jonesboro.

  ii.  *Pretext*.

Although the elements of the *McDonnell Douglas* analysis can become muddled, it is clear that the Plaintiff has failed to present any evidence of pretext that would rebut the Defendants' legitimate, non-discriminatory purposes for termination. Mere "proof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext for discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)); see also, *Krenik v. County of Le Sueur*, 47 F.3d 953, 958 (8th Cir.1995) (to survive summary judgment, plaintiff must provide evidence that defendant's proffered explanation is both incorrect and that discrimination is the true explanation).

The Plaintiff has entirely failed to meet this burden. In his Response, the Plaintiff offers a number of claims presented by the Defendants that are "ridiculous" or "outright false," but offers no explanation or proof that his assertions are true. However, there is an expansive paper trail supporting the Defendants' non-discriminatory actions including the Edgewater audit itself, the Plaintiff's PIP, extensive emails between Suzanne Allen, Cliff Rushing, and the Plaintiff documenting the Plaintiff's failures, an affidavit provided by Ms. Allen, and the deposition testimony of Mr. Rushing.

Plaintiff's contention that the Defendants' proffered reasons are "ridiculous" does nothing to negate their veractiy. Further, the Plaintiff fails to offer any showing of how these alleged falsehoods are somehow pretexutal or in any way related to his alleged discrimination.

### III.  CONCLUSION

There are no known or obvious constitutional violations committed by Perrin, Douglas, or Allen and thus they are entitled to qualified immunity to the extent they have been sued in their individual capacity.  There is no evidence of any custom or policy, official or unofficial, on the part of the city of Jonesboro which has resulted in any harm to Woodruff. As conceded by the Plaintiff, his First Amendment retaliation claims should be dismissed per *Garcetti v. Ceballos*, As such, all claims based on official capacity should be dismissed on summary judgment.

**Respectfully submitted,**

**By:   /s/ C. Burt Newell**
**C. Burt Newell, Bar No. 82118**
**Attorney for Defendants**
**P.O. Box 1620**
**Hot Springs, AR 71902-1620**
**(501) 321-2222**
**(501) 624-0533 Fax**
**aperma@hotspringslaw.net**

**Carolyn B. Witherspoon, Bar No. 78172**
**CROSS, GUNTER, WITHERSPOON &**
**GALCHUS, P.C.**
**500 President Clinton Avenue, Suite 200**
**Little Rock, AR 72201**
**501/371-9999**
**Fax: 501/371-0035**
**cspoon@cgwg.com**

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 26th day of June, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, and I hereby certify that I have mailed the document by the United States Postal Service to the following non-CME/ECF participants:

Lucien Gillham
SUTTER & GILLHAM, P.L.L.C.
P.O. Box 2012
Benton, AR 72018

               By:   /s/ C. Burt Newell
                  C. Burt Newell, Bar No. 82118