# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

ERICK WOODRUFF                                                   PLAINTIFF

v.                      CASE NO. 3:17-CV-00203 BSM

CITY OF JONESBORO, ARKANSAS;
and SUZANNE ALLEN; DEWAYNE DOUGLAS;
and MAYOR HAROLD PERRIN in their Individual
and Official Capacities                                        DEFENDANTS

## ORDER

Defendants' motion for summary judgment [Doc. No. 24] is granted on plaintiff Erick Woodruff's race discrimination claims under 42 U.S.C. section 1983 and the Arkansas Civil Rights Act ("ACRA"). The remaining claim for retaliation under the Arkansas Whistle-Blower Protection Act is hereby remanded to state court.

## I. BACKGROUND

When viewed in the light most favorable to Woodruff, the non-moving party, the facts are as follows. Woodruff was hired to work as the Director of Public Works for the City of Jonesboro on April 11, 2006. Pl.'s Resp. Def.'s Statement F. ("Facts") ¶ 3, Doc. No. 35. In 2009, defendant Mayor Harold Perrin hired Woodruff to head the Information Technology ("IT") department. Facts ¶ 4. The mayor's son, Mark Perrin, worked part time for the Jonesboro Police Department. *Id.* at ¶ 6. His job was to log sex-offender data. *Id.*

On December 4, 2014, Woodruff caught Mark Perrin trying to change the firewall settings on the police department's computer. Woodruff Dep. 30:4–31:15, Doc. No. 25-1.

When Woodruff examined the computer, the contents of the hard drive had been entirely deleted. *Id.* 38:13–39:9. This was suspicious and greatly concerned Woodruff. *Id.* 40:2.

Woodruff discussed the incident with the mayor. Facts ¶ 12. Shortly thereafter, the mayor met with a company called Edgewater to discuss having the city's IT department audited. *Id.* ¶ 17. Edgewater was one of five companies that submitted proposals to conduct the IT audit. *Id.* ¶ 23. In April 2015, the Jonesboro City Council's Finance Committee accepted Edgewater's bid, and Edgewater, led by Cliff Rushing, began its audit. *Id.* ¶¶ 24, 25. The results of the audit were presented to the City Council in September 2015. *Id.* ¶ 33.

It is undisputed that the audit was critical of Woodruff and identified issues that needed to be corrected in the IT department. *Id.* ¶¶ 40, 41. A legislative audit conducted in 2015 corroborates this finding. Douglas Aff. ¶ 14, Doc. No. 25-13; Doc. No. 25-11, at 11. Suzanne Allen, who was hired as the city's new chief financial officer on September 21, 2015, worked with Rushing to draft a Performance Improvement Plan ("PIP) following the audit. Facts ¶¶ 35, 38. Allen, Woodruff, and Human Resources Director Dewayne Douglas met on March 4, 2016, to review the PIP and discuss what was expected of Woodruff going forward. *Id.* ¶ 41. After consistently failing to meet the requirements of the PIP, Woodruff was informed he was not eligible for a salary increase in October 2016. *Id.* ¶¶ 46–58.

Allen terminated Woodruff on January 9, 2017, for failing to perform at an acceptable level and for failing to meet the goals of the PIP. *Id.* ¶ 66. Woodruff disagrees, claiming that the reasons given for his termination are merely pretext and that he was actually denied

a raise and terminated at the behest of the mayor because he is black and in retaliation for discovering incriminating information about the mayor's son.

Woodruff brought retaliation and race discrimination claims under the ACRA; a retaliation claim under the Arkansas Whistle-Blower Act; and retaliation and race discrimination claims under 42 U.S.C. section 1983. Compl., Doc. No. 2. He moved to dismiss his claim for retaliation under the ACRA, and the motion was granted without prejudice. Doc. Nos. 12, 17. Woodruff does not dispute that his claim for retaliation under section 1983 should be dismissed; thus, the defendants' motion for summary judgment is granted as to this claim as a preliminary matter. *See* Doc. No. 36, at 1; Doc. No. 37, at 1. His claims for race discrimination under 42 U.S.C. section 1983 and the ACRA and for retaliation under the Arkansas Whistle-Blower Act remain.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring trial. *Id.* When considering a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). However,

3

a plaintiff's own self-serving, conclusory allegations will not suffice to defeat summary judgment. *Haas v. Kelly Servs.*, 409 F.3d 1030, 1034 (8th Cir. 2005). Additionally, the evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Claims of race discrimination pursuant to the ACRA are analyzed using the same legal framework as claims for race discrimination under Title VII. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011). Woodruff lacks direct evidence of racial discrimination. *See* Doc. No. 21, at 20 ("The reason for this is that unlike the race claims, there is direct evidence of intent"). Thus, to establish a *prima facie* case of racial discrimination under the ACRA, Woodruff must show that (1) he was a member of a protected group, (2) he was meeting the legitimate expectations of his employer, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of racial discrimination. *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 773 (8th Cir. 2016). The burden at this stage is not onerous, and Woodruff can establish an inference of discrimination in a variety of ways, such as by showing differential treatment of similarly situated employees outside the protected class. *Id.* at 774, 776. Woodruff is black, and he disputes whether he met the legitimate expectations of his employer. It is undisputed that he was denied a raise and that he was terminated following a critical audit of the IT department.

Summary judgment is granted for defendants on Woodruff's race discrimination claims because Woodruff has pointed to no evidence supporting an inference of race

4

discrimination. In support of his race claim, he points out that a white man named Wixson Huffstetler got a raise. *See* Doc. No. 37, at 19. The problem with this is that Woodruff has failed to demonstrate Huffstetler's situation was similar in all relevant respects to his situation. *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003). Simply stating that Huffstetler is white and got a raise despite having been disciplined is not sufficient. "[Woodruff's] brief provides no explanation regarding what specific [job Huffstetler] held and no reference to any evidence in the record that provides such information." *Grant*, 841 F.3d at 774.

Even when the evidence is viewed in the light most favorable to Woodruff and all reasonable inferences are drawn in his favor, he has failed to establish his *prima facie* case of race discrimination.[1] For these reasons, summary judgment is granted in favor of defendants on Woodruff's claim for race discrimination under the ACRA. Although Woodruff's brief indicates that he brought a race claim under Title VII, he actually did not. Compl., Doc. No. 2. Even if he had, summary judgment would be granted in favor of defendants for the same reasons set forth above.

Finally, because the burden of showing a *prima facie* case of discrimination is the same under section 1983 as it is under the ACRA and Title VII, summary judgment is

---

[1]Woodruff seems to understand that he has not provided sufficient evidence to avoid summary judgment on his race discrimination claims. He states in his extremely minimal response, "In the event the Court finds that the race discrimination claims should be dismissed pursuant to Rule 56, the only remaining claims would be state law claims for violation of the Whistleblowers Act and violation of Section 105 of the Arkansas Civil Rights Act. Plaintiff would request that they be dismissed without prejudice and remanded to state court." Pl.'s Resp. Def.'s Mot. Summ. J. ¶ 4, Doc. No. 36.

granted in favor of defendants on Woodruff's claim for race discrimination under section 1983. *See Richmond v. Bd of Regents of Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992).

## IV.  CONCLUSION

For these reasons, the defendants' motion for summary judgment [Doc. No. 24] is granted on Woodruff's race discrimination claims under the ACRA and section 1983. The only remaining claim is for retaliation under the Arkansas Whistle-Blower Act. Instead of exercising supplemental jurisdiction over this claim, it is hereby remanded to state court.

IT IS SO ORDERED this 16th day of August 2018.

_____
UNITED STATES DISTRICT JUDGE